AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*
Apple I-Phone Cellular Phone
Serial Number: FK1XVERKHFLQ,

)
)
)
)
)
)

Case No. 2: 19 mj 642

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A (incorporated by reference)

located in the _____ Southern _____ District of _____ Ohio _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B (incorporated by reference)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 846 and 841(a)(1) | Conspiracy to Possess with Intent to Distribute a Controlled Substance, and Possession with Intent to Distribute a Controlled Substance |

The application is based on these facts:

See attached Affidavit (incorporated by reference)

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jacob Smith, DEA TFO
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Aug. 14, 2019

*Judge's signature*

City and state: Columbus, Ohio

Elizabeth Deavers - United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

IN THE MATTER OF THE SEARCH OF
**Apple I-Phone Cellular Phone**
**Serial Number: FK1XVERKHFLQ**,
CURRENTLY LOCATED AT
**DEA Columbus District Office –**
**Temporary Storage Locker located at**
**500 South Front Street, Columbus, Ohio**
**43215**

Case No. _2:19 mj 642_

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH AND SEIZE

I, Jacob Smith, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am currently employed as a Deputy for the Franklin County Sheriff's Office, currently assigned full-time as a Task Force Officer with the Drug Enforcement Administration (DEA) Columbus District Office. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code (U.S.C.) § 2510(7), that is, an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in Title 18, U.S.C.§ 2516. Your Affiant is empowered to investigate, to make arrests with or without warrants and to execute search warrants under the authority of Title 21 U.S.C. § 878 and the Ohio Revised Code. Since 2013, Your Affiant has been employed with the Franklin County Sheriff's Office. Prior to that employment, Your Affiant was employed with multiple law enforcement agencies within the State of Ohio for approximately three years. Those law enforcement agencies include the Village of Obetz Police Department as a full-time Officer, Sharon Township Police Department as a part-time Officer and the Westerville Police Department as a reserve Officer.

2.       Prior to being assigned to the DEA Task Force in February 2019, Your Affiant was a Detective with the Franklin County Sheriff's Office (FCSO), Special Investigations Unit and had been assigned to that unit since July 2014. Your Affiant, while assigned to the Special Investigations Unit, has conducted or participated in numerous state and federal narcotics investigations concerning the possession and distribution of controlled substances. Your Affiant was also assigned to the FCSO Heroin Overdose Prevention and Education (H.O.P.E) Task Force where I conducted numerous criminal investigations pertaining to fatal and non-fatal overdoses, these investigations resulted in convictions in Franklin County Common Pleas Court and United States District Court, Southern District of Ohio.

3.       As a DEA Task Force Officer, I have participated in numerous investigations which have resulted in the successful prosecution of individuals and organizations involved in trafficking heroin, cocaine, cocaine base ("crack"), marijuana, methamphetamine and other controlled substances. Through the course of these investigations, I have personally interviewed confidential sources and other persons involved in the distribution of illegal narcotics. I have also interviewed persons arrested for the distribution of illegal narcotics. I have spoken with more experienced narcotics investigators with whom I have worked concerning the practices of narcotics traffickers and the best investigative methods to use when conducting investigations of narcotics trafficking organizations. Through the course of my investigations and through my conversations with more experienced narcotics investigators, I have become familiar with the methods and means utilized by persons who participate in the illegal distribution of controlled substances.

4.       This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5.      The property to be searched is an **Apple I-Phone Cellular Phone, Serial Number: FK1XVERKHFLQ,** hereinafter the "Device."  The Device is currently located at the **Drug Enforcement Administration (DEA) Columbus District Office temporary storage locker, 500 South Front Street, Columbus, Ohio 43215.**

6.      The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7.      On March 28, 2019, at approximately 10:30 p.m., DEA (Columbus) TFO Bryan Mason was contacted by Columbus Division of Police (CPD) regarding a traffic stop involving Cameron VANSICKLE.  According to CPD Officers, they had initiated a traffic stop on a vehicle being operated by VANSICKLE for a traffic violation in the Columbus area. During the traffic stop, it was discovered VANSICKLE was operating the motor vehicle with a suspended driver's license. During an Administrative Inventory of the vehicle, officers recovered approximately 100 grams of suspected methamphetamine from the passenger glove box. VANSICKLE was transported to the DEA Columbus District Office to be interviewed by investigators.

8.      Upon arriving at the DEA office, DEA TFO Ashenhurst verbally advised VANSICKLE of his Miranda rights. VANSICKLE acknowledged his understanding of his rights and voluntarily agreed to speak with investigators.  During the interview, Your Affiant and TFO Ashenhurst questioned VANSICKLE about the suspected methamphetamine found inside the vehicle.  VANSICKLE stated, in substance, that he had purchased the methamphetamine for $1050. VANSICKLE stated he provided $100 of his own money toward the total purchase amount of $1050. VANSICKLE also stated K.R. had provided an unknown portion of money toward the

3

total as well. VANSICKLE explained the total amount ($1,050) used to purchase the methamphetamine came from multiple individuals to include himself and K.R. During the interview, VANSICKLE admitted he organized the narcotics transaction for the methamphetamine, collecting money from multiple individuals in order to obtain a larger amount of methamphetamine, which allowed VANSICKLE to purchase the methamphetamine at a better price point.

9. VANSICKLE further informed investigators that he met with an individual he knows as "Juice" to purchase the methamphetamine which was found by CPD Officers during the inventory of the vehicle. VANSICKLE provided investigators with telephone number 614-679-4009 which he stated is utilized by "Juice." Upon reviewing toll records, investigators were able to corroborate and confirm telephone communication between VANSICKLE's phone and 614-679-4009 on March 28, 2019, prior to the initiation of the traffic stop involving VANSICKLE.

10. The suspected methamphetamine was submitted to the DEA North Central Laboratory for chemical analysis. On July 26, 2019, TFO Mason received laboratory results confirming the suspected methamphetamine tested positive for d-Methamphetamine Hydrochloride with net weight of 97.3 grams and a substance purity of 100%.

11. On May 31, 2019, the Honorable Franklin County Common Pleas Judge Karen Phipps authorized a search warrant for the geo-location of the cellular phone associated with 614-679-4009, known to be utilized by Robert DAVIS also known as "Juice." During the course of subsequent physical surveillance combined with geo-location data transmitting from telephone number 614-679-4009, DAVIS was confirmed to be the primary possessor and user of the cellular phone associated with 614-679-4009

4

12. During this investigation, SOI-1 has been identified as a customer and co-conspirator of DAVIS' regarding the illegal trafficking in methamphetamine in and around Franklin County, Ohio. On July 3, 2019 investigators conducted surveillance on DAVIS. During surveillance, SOI-1 and DAVIS were observed meeting at the Spot Free Car Wash located at 5466 E. Livingston Avenue in Columbus, Ohio. In June of 2019, a Franklin County Municipal Court Judge granted a search warrant for the application of a Global Positioning System (GPS) device onto a black Chrysler 300 bearing Ohio registration (HSU-5842). During the course of this investigation, DAVIS has been observed possessing and operating the black Chrysler 300 related to the GPS device. Prior to arriving in the area, GPS data transmitting from DAVIS' Chrysler 300 revealed DAVIS' vehicle parked in the apartment complex which houses 2217 Noe Bixby Road. While on surveillance, SOI-1 was observed meeting with DAVIS who arrived in the Chrysler 300. Investigators observed SOI-1 with DAVIS near the trunk of DAVIS' vehicle prior to leaving the car wash. After a brief amount of time, SOI-1 and DAVIS departed from the Spot Free Car Wash.

13. Upon leaving the car wash, a uniformed Ohio State Highway Patrol (OSHP) officer initiated a traffic stop on the vehicle which SOI-1 was operating. The reason for the traffic stop on SOI-1's vehicle was due to the vehicle bearing an expired vehicle registration. During the course of the traffic stop, a Whitehall Police Department Officer's certified K-9 partner Summit conducted a free-air sniff around the exterior of SOI-1's vehicle. Upon conducting the sniff, the K-9 had a positive indication for the odor of narcotics emitting from SOI-1's vehicle. During the course of the search, law enforcement located approximately 465.5 gross grams of a substance which field tested positive for methamphetamine. Law enforcement also seized approximately $3,730 which was located inside a locked box within the trunk of the vehicle SOI-1 was operating. SOI-1 was transported to the DEA (Columbus) office to be interviewed.

5

14.     After being advised of his Miranda Rights, SOI-1 voluntarily informed investigators he/she met with an individual known as "Juice" to obtain what SOI-1 believed to be a half pound to a whole pound of methamphetamine.  SOI-1 was later able to positively identify "Juice" as Robert DAVIS utilizing a photograph of Robert DAVIS.  According to SOI-1, DAVIS provided SOI-1 with the suspected methamphetamine to hold onto. SOI-1 stated that in exchange for holding onto the drugs and returning them to DAVIS at DAVIS's request, DAVIS would provide SOI-1 with $500.00 and a small amount of drugs. SOI-1 provided investigators with telephone number 614-679-4009 which is utilized by SOI-1 to contact DAVIS.  Telephone toll analysis between SOI-1's telephone number and 614-679-4009 as well as surveillance corroborates information provided by SOI-1.

15.     On or about July 25, 2019, Ohio State Highway Patrol (OSHP) conducted a traffic stop on a vehicle which was being operated by an individual identified for purposes of this affidavit as SOI-2. Prior to the traffic stop, DEA observed SOI-2's vehicle arrive and park in the rear of an apartment building which houses DAVIS' primary residence. After a brief amount of time, members of DEA observed SOI-2's vehicle leave the apartment complex. Members of DEA maintained surveillance on SOI-2's vehicle until an Ohio State Highway Patrol Trooper initiated the traffic stop. Upon making contact with the driver, SOI-2, the OSHP Trooper immediately smelled the aroma of marijuana emitting from the vehicle. SOI-2 voluntarily uttered to the OSHP Trooper that he was in possession of "crystal meth".  Your Affiant knows, through training and experience, the term "crystal meth" is a slang term for methamphetamine. During the course of a probable cause search of the vehicle, law enforcement located approximately 369.8 gross grams of suspected methamphetamine.

16.     After being advised of his Miranda Rights, SOI-2 voluntarily informed investigators the drugs, which SOI-2 admitted was methamphetamine, belonged to an individual known as "Juice." According to SOI-2, "Juice" had left the drugs in SOI-2's vehicle after SOI-2 had dropped "Juice" off at his residence. During the interview, SOI-2 informed Your Affiant that "Juice" lives in an apartment complex off of Noe Bixby Road. SOI-2 stated "Juice" had asked SOI-2 to take the drugs to an individual due to "Juice" not being able to meet with the individual. SOI-2 stated they hadn't yet agreed to complete the narcotics transaction and alleged they were going to bring the methamphetamine back to "Juice" who was located at a YMCA on Karl Road. Although SOI-2 stated they hadn't yet agreed to complete the narcotics transaction for "Juice" SOI-2 admitted people would be expecting both money and the methamphetamine from SOI-2. SOI-2 further provided investigators with telephone number 614-679-4009 which SOI-2 stated is utilized by "Juice". Surveillance and telephone toll analysis between SOI-2's telephone number and 614-679-4009 corroborates communication between DAVIS and SOI-2.

17.     On August 2, 2019, the honorable United States Magistrate Judge Norah McCann King granted a search warrant for the residence of 2217 Noe Bixby Road in Columbus, Ohio. At this time, United States Magistrate Judge Norah McCann King also granted a Federal arrest warrant for Robert DAVIS as well.

18.     On August 3, 2019 at approximately 7:50 a.m., the Drug Enforcement Administration (DEA) Columbus District Office (CDO), with assistance from the Franklin County Sheriff's Office, Special Weapons and Tactics (S.W.A.T) team, executed the Federal search warrant at 2217 Noe Bixby Road in Columbus, Ohio. During the search warrant, law enforcement located individuals to include DAVIS inside the residence. While conducting a search of the

residence, law enforcement located two cellular phones which were located inside DAVIS' bedroom.

19.     While at the residence, TFO Smith made contact with DAVIS who was located in the backseat of an Ohio State Highway Patrol marked cruiser. Upon making contact with DAVIS, TFO Smith verbally provided DAVIS with his Miranda Warnings. DAVIS acknowledged he understood his rights and agreed to speak with law enforcement.

20.     Following the search warrant, DAVIS was arrested on the active Federal arrest warrant.  Upon being transported to DEA CDO headquarters, DAVIS was provided with a DEA Constitutional Rights Wavier form which DAVIS voluntarily signed agreeing to continue to speak with law enforcement.  During the interview, DAVIS admitted to trafficking methamphetamine. DAVIS admitted that the cellular phones seized, to include the Device, and a blue LG Cellular Phone (IMEI: 359275-09-162079-4), was utilized by DAVIS to traffic narcotics and speak on personal matters. DAVIS admitted the Device's telephone number was 614-679-4009. DAVIS also admitted to utilizing the alias of "Juice."

21.     I am aware, through training and experience, that it is common for narcotics traffickers to utilize cellular phones to arrange and complete narcotics transactions. I am also aware, through training and experience, that it is common for narcotics traffickers to utilize their cellular phones to contact their customer base as well as sources of supplies to obtain the narcotics in which they traffic.

22.     The Device is currently in the lawful possession of the DEA.  It came into the possession of the DEA pursuant to the arrest of **DAVIS** and the ensuing execution of a Federal search warrant at the residence as described above.   Therefore, while the DEA might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance

of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws. The Device is currently in storage at the **DEA Columbus District Office, Temporary Storage Locker located at 500 South Front Street in Columbus, Ohio 43215** In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the DEA.

## **TECHNICAL TERMS**

22.　　Based on my training and experience, I use the following technical terms to convey the following meanings:

　　　　a.　　Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.    Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.    GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

d.    Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections

10

between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

23.     Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as, among other things, a wireless telephone for voice and text messages, digital camera, portable media player, GPS navigation device and portal to the internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

24.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

25.     *Forensic evidence*.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

11

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

26. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

12

27.   *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

28.   I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

## **REQUEST FOR SEALING**

29.     It is respectfully requested that this Court issue an order sealing, until further order of

the Court, all papers submitted in support of this application, including the application and search

warrant.  I believe that sealing this document is necessary because the warrant is relevant to an ongoing

investigation into the criminal organization as not all of the targets of this investigation will be

searched at this time.  Based upon my training and experience, I have learned that, online criminals

actively search for criminal affidavits and search warrants via the internet, and disseminate them to

other online criminals as they deem appropriate, i.e., post them publicly online through the carding

forums.  Premature disclosure of the contents of this affidavit and related documents may have a

significant and negative impact on the continuing investigation and may severely jeopardize its

effectiveness.

Respectfully submitted,

Jacob Smith
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me
on August 14, 2019:

ELIZABETH A. PRESTON DEAVERS
CHIEF UNITED STATES MAGISTRATE JUDGE

14

## ATTACHMENT A

The property to be searched is an **Apple I-Phone Cellular Phone Serial Number: FK1XVERKHFLQ** hereinafter the "Device."  The Device is currently located at the **Drug Enforcement Administration (DEA) Columbus District Office temporary storage locker, 500 South Front Street, Columbus, Ohio 43215.**

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of **Title 21, United States Code, Sections 841(a)(l) and 846**; and involve **Robert DAVIS** since the origination of data on the device, including:

      a.      lists of customers and related identifying information;

      b.      types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

      c.      any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

      d.      any information recording **Robert DAVIS's** schedule or travel from the origination of data on the device to the present;

      e.      all bank records, checks, credit card bills, account information, and other financial records.

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.